IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KAMAKI SKIATHOS, INC., | * |
| PANAGIOTIS AVRAMIS, | * |
| and | * |
| CODY GABRIELE, | *   Civil No. JFM-05-0559 |
| Plaintiffs, | * |
| v. | * |
| ESSEX INSURANCE COMPANY, | * |
| Defendant | * |

OPINION

This declaratory judgment action presents the question of whether or the Defendant Essex Insurance Company ("Essex") is obligated to cover the Plaintiffs' costs in defending against three lawsuits arising out of the actions of bouncers employed at Moby's Bar ("Moby's") in Baltimore. The parties have filed cross-motions for summary judgment. For the reasons stated below, Essex's motion will be granted and Plaintiffs' motion will be denied.

I.

A. The Underlying Suits

All three underlying complaints result from the actions of bouncers at Moby's in ejecting patrons from the premises. In all three cases, the ejected patrons filed suits for personal injury damages.

In the King action (King v. Kamaki Skiathos, et al., Circuit Court for Baltimore City,

Case No. 24C03005617), Plaintiff Michael King alleged that the several agents, servants and/or employees of Moby's "suddenly and without warning … brutally attacked the Plaintiff, kicking and beating him so severely, and without just cause," resulting in an "intentional and unpermitted application of trauma." King Complaint, Dowling Cert. Ex. B, at ¶ 5. King brought three claims for relief, but for purposes of this action, only Count I remains. Count I relies on the doctrine of vicarious liability to recover against Moby's principals for the alleged negligence of Moby's agents or servants in ejecting King.

In the Kraft action (Kraft v. Schindeldecker, et al., Circuit Court for Baltimore City, Case No. 24C03005642), Plaintiff Zachary Kraft alleged that Todd Schindeldecker, a bouncer at Moby's, forcibly threw Kraft from the bar and followed him down the street, then "came up from behind the Plaintiff and punched him with tremendous force on the side of the head." Kraft Complaint, Dowling Cert. Ex. A, at ¶ 12. Kraft brought four claims in his suit, but only Count II alleging negligence against Schindeldecker remains.

In the Louard action (Louard v. Kamaki Skiathos and Cody Gabriele, Circuit Court for Baltimore City, Case No. 24C04005095), Plaintiff Lamont Louard alleged that he was "forcefully detained," placed in a "full nelson," and carried out of Moby's by defendant Gabriele after having been found in the women's restroom. Louard Complaint, Dowling Cert. Ex. C, at ¶ 7. Louard alleged that Gabriele continued to "assail" him, and "held [] Louard's hands so that he could not protect himself and thrust him down onto the street." *Id.* at ¶ 8. Louard brought eight claims in his complaint, only one of which remains–Count III alleging negligence against Gabriele.

B. The Essex Policies

The events giving rise to the underlying tort suits occurred while Moby's was insured under two different comprehensive liability policies issued by Essex, one covering the period from 12/01/01 through 12/01/02 (the "2001 Policy") and the other covering the period from 12/01/02 through 12/01/03 (the "2002 Policy").  Both policies were substantially the same.

Under both policies, the general grant of coverage was a blanket statement:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies … However, we have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.[1]

2001 Policy, Dowling Cert. ex. D, at "COMMERCIAL GENERAL LIABILITY COVERAGE FORM," "SECTION I – COVERAGES," Section 1, "COVERAGE A," subsection 1(a).

For purposes of the parties' cross-motion for summary judgment, however, the relevant aspects of the policies are found in their exclusions.  Specifically, the policies exclude coverage of any intentional injuries or damage—the policies clearly state that "[t]his insurance does not apply to: a. Expected Or Intended Injury.  'Bodily Injury' or 'property damage' expected or intended from the standpoint of the Insured." *Id.* at 2(a).  In addition, the policies exclude intentional torts such as assault and battery, although in slightly different ways.

The King Action occurred while Moby's was insured under the 2001 Policy.  2001

---

[1] The policies then defined relevant terms; "bodily injury" was defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *Id.* at V(3). In addition, any bodily injury or property damage must have been caused by an "occurrence" in order to be covered; the policies stated that the insurance would apply only if the bodily injury or property damage was:
(1)   caused by an "occurrence" taking place in the "coverage territory"; and
(2)   occurring during the policy period.
*Id.* at 1(b).  An "occurrence" was defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at V(13).

Policy, Dowling Cert. ex. D.  Under this policy, assault and battery were excluded from coverage by the following:

> This insurance does not apply to any claim, suit, cost or expense arising out of:
> D. ASSAULT AND/OR BATTERY
> Assault and/or battery or out of any act or omission in connection with the suppression of such acts, whether caused by or at the instigation or direction of any Insured, Insured's employees, patrons or any other person.

2001 Policy, Dowling Cert. ex. D, Endorsement no. M/E-001.

The Kraft and Louard Actions occurred while Moby's was insured under the 2002 Policy. 2002 Policy, Dowling Cert. ex. E.  This policy went into more detail in its provision excluding assault and/or battery, stating that:

> The coverage under this policy does not apply to any claim, suit, cost or expense arising out of assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any Insured, Insured's employees, patrons or any other person … Furthermore, assault and/or battery includes "bodily injury" resulting from the use of reasonable force to protect persons or property.

*Id.* at Endorsement no. M/E-024 (9/00).   The 2002 Policy also contained an exclusion provision directed specifically at bars and restaurants, taverns, night clubs, and fraternal and social clubs, which again directly excluded assault and/or battery with almost identical language to that above.  *Id.* at Endorsement no. M/E-189 (9/00).

## II.

Summary judgment is proper where there is no genuine issue of material fact and the moving party proves that it is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56. Materiality is determined by the substantive law of the case; if a fact is in dispute that might affect the outcome of a case, it is considered to be material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In the context of a suit for declaratory judgment resolving insurance

coverage, summary judgment in favor of the insurer is proper where there are no material facts in dispute which would lead to a potentiality for coverage. *See e.g.*, *Montgomery Co. Bd. Of Educ. v. Horace Mann Ins. Co.*, 840 A.2d 220, 224 (Md. Ct. Spec. App. 2003), *aff'd*, 860 A.2d 909 (Md. 2004) (finding no genuine disputes as to material facts because the sole question to be resolved by the court was the legal interpretation of "relevant statutes, the various insurance agreements between the parties, and the Complaint," and granting summary judgment).

### III.

Under Maryland law two inquiries are made to determine whether an insurer has a duty to defend its insured against tort suits. *See, e.g., St. Paul Fire & Ins. Co. v. Pryseski*, 438 A.2d 282, 285 (Md. 1981). First, the court examines the coverage provided for in the policy and any defenses under its terms. *Id.* Second, the court asks whether the allegations in the complaint potentially bring the claim within the coverage. *Id.* Thus, the court inquires first as to the boundaries of coverage, and second as to the allegations made in the underlying suit.

In determining the boundaries of coverage, the court construes an insurance policy just as it does any other contract, by giving its terms their "customary, ordinary, and accepted meaning." *Aetna Cas. & Sur. Co. v. Cochran,* 651 A.2d 859, 862 (Md. Ct. App. 1995). If a term is ambiguous, extrinsic evidence may be admitted to show both intent of the parties and any possible special trade usage of terms. *Pryseski*, 438 A.2d at 288. Here, however, it is not necessary to consider extrinsic evidence because the Essex policies use clear language and define any terms that might otherwise be found ambiguous. The resulting coverage excludes intentional injury and the torts of assault and battery. The 2002 Policy even explicitly confirms that this exclusion operates in the context of bars such as Moby's.

Once the court has determined the scope of coverage, the court considers the allegations in the tort suit to determine whether the claim is potentially covered by the policy. *Montgomery County Bd. of Educ.*, 840 A.2d at 226. This test favors coverage, since, as the Maryland Supreme Court has noted, "representation from the insurer … is part of the bargained-for exchange in any insurance policy." *Montgomery Co. Bd. Of Educ.*, 840 A.2d at 225-26 (citing *Cochran*, 651 A.2d at 865). Even where a tort plaintiff fails to allege facts that clearly bring the claim within coverage, the insurer must defend if the plaintiff shows a potentiality of coverage. *Brohawn v. Transamerica Ins. Co.*, 347 A.2d 842, 850 (Md. Ct. App. 1975). If, based on the allegations in the underlying suit, the court is unsure about coverage, any doubts should be resolved in favor of the insured. In this case, however, the plaintiff has failed to show a potentiality for coverage. There is little room for doubt that the Essex policies do not cover the types of claims alleged in the King, Kraft, and Louard actions.

### A. The King Action.

Count I is the only remaining count of the King Action for which the Plaintiffs seek coverage. Pl. Mem. in Opp'n at 5 (stating that "Plaintiffs do not contend that King's battery or negligent hiring counts afford coverage"). Count I alleges that "[s]uddenly and without warning, several of Defendant's agents, servants and/or employees, brutally attacked the Plaintiff … without just cause…" King Complaint, Dowling Cert. ex. B, at ¶ 5. Were it not for Plaintiff King's caption "Negligence" on Count I, and his allegation that the attack was caused "solely to (sic) and by reason of the negligence of the Defendants' agents…," there would be no reason to expect that King was complaining of anything other than an assault and/or battery.

Plaintiffs seek to circumvent the intentional character of their allegation by characterizing

it as a potential situation of defense of property or others.  They contend that the bouncer Schindeldecker "reacted to King attempting to hit a female patron over the head with a beer bottle by striking him once and restraining him."  Pl. Mem. in Opp'n at 5.  This contention, if true, would effectively place the claim outside of the assault and/or battery exclusion under the 2001 Policy.  Pl. Mem. in Opp'n at 4-5.  However, this contention is clearly contradicted by the King complaint itself.  It affirmatively alleges that King did not contribute to the attack by any "negligence or provocation," and that the initial attack occurred "suddenly and without warning."  King Complaint, Dowling Cert. ex. B, at ¶ 7,5.

## B. The Kraft Action.

Count II is the only remaining count of the Kraft Action for which the Plaintiffs seek coverage.  Pl. Mem. in Opp'n at 4 (stating "Plaintiff's only contention with regard to the Kraft case is that the negligent (sic) count survived analysis for both defense and coverage").  In Count II, the Kraft complaint incorporates the "Facts Common to All Counts," and additionally asserts that the bouncer Schindeldecker owed a duty of care to Moby's patrons which he subsequently breached by "violently removing the Plaintiff from the bar … [and] negligently using additional force on the Plaintiff…"  Kraft Complaint, Dowling Cert. ex. A, at 5.

The "Facts Common to All Counts" described in the Kraft complaint include allegations that Schindeldecker "forcibly thr[ew]" Kraft from the bar, and "punched him with tremendous force on the side of the head," constituting an "unprovoked battery."  Kraft Complaint, Dowling Cert. ex. A, at 3.  As Essex argues, this incorporation of the common facts into Count II contributes to its appearance as an intentional tort.  In addition, the allegations specific to Count II are inherently intentional acts.  In fact, even Plaintiffs portray Kraft's allegations as intentional,

describing them as: "…Schindeldecker used physical force to remove Kraft from the tavern and that while outside, struck Kraft in the face causing him to hit his head on the sidewalk." Pl. Mem. in Opp'n at 3.

Plaintiffs acknowledge that the reference to the common facts incorporates allegations of intentional harm, but argue that there is still a potential for coverage. They do this by hypothesizing a scenario where the negligence alleged in Count II occurred while Schindeldecker was inside the bar and acting as a bouncer ("on the premises and within the scope of employment"), and the intentional tort did not occur until Schindeldecker followed Kraft down the street ("outside the scope of employment"). Pl. Mem. in Opp'n at 3-4. Had this been stated, or even alluded to in Kraft's complaint, it would be a more arguable position. However, Kraft clearly alleges that Schindeldecker violently removed him from Moby's, and that such action, in addition to others, constituted a breach of the duty of care.

Thus, Count II, although titled "Negligence," in reality alleges a battery. Battery, as an intentional tort, is explicitly excepted from coverage by the 2002 Essex Policy in question here. It clearly does not fall within the bounds of coverage, and the Plaintiffs cannot demonstrate a potentiality of coverage.

## C. The Louard Action.

Count III is the only remaining count of the Louard Action for which the Plaintiffs seek coverage. Pl. Mem. in Opp'n at 6 (stating that "Plaintiffs make no contention that the other counts in the Louard action would provide a basis for coverage"). Louard's Count III, titled "Negligence," incorporates all the foregoing allegations, including "Facts Common to All Counts," and additionally alleges that:

> Defendant Gabriele breached said duty of care by negligently (1) expelling Plaintiff Louard from the establishment; (2) utilizing unreasonable force when expelling Plaintiff Louard from Defendant Moby's Bar; (3) detaining Plaintiff Louard's arms in such a manner that he was incapable of defending himself; (4) placing Plaintiff Louard in such a position that he was incapable of standing on his own; and (5) causing Plaintiff Louard to fall to the roadway surface.

Louard Complaint, Dowling Cert. ex. C, at ¶ 24.  This count yields the most colorable claim for coverage, since it does appear on its face to allege some form of negligence.  However, like Kraft's claim, although Louard used the right negligence "terminology", in reality his claim masks a simple battery claim.

Like Kraft, Louard incorporates "Facts Common to All Counts," which make clear allegations of intentional harm.  For example, the same events that are narrated above to appear as negligence are described in the common facts as: "Even after Plaintiff Louard had been forced out of Defendant Moby's Bar, Defendant Gabriele continued to assail him.  Defendant Gabriele held Plaintiff Louard's hands so that he could not protect himself and thrust him down onto the street…" *Id.* at ¶ 8 (emphasis added).  In fact, the very next paragraph begins, [w]hile Plaintiff Louard was being assaulted …" *Id.* at ¶ 9 (emphasis added).  Therefore, like Kraft's, Louard's misnamed negligence claim must be read as a battery claim and is excluded from the 2002 policy.

In sum, the claims for which all Plaintiffs seek coverage in this declaratory judgment action fall outside the boundaries of the Essex policies.  Accordingly, a separate order is being entered herewith granting Essex's motion for summary judgment and denying Plaintiffs' motion for summary judgment.

<u>October 27, 2005</u>               /s/
Date                                  J. Frederick Motz
                                      United States District Judge